Dorothy ARRUDA and Melanie Velleco, Plaintiffs,

v.

SEARS, ROEBUCK & COMPANY and Sears National Bank, Defendants.

Dorothy Arruda, Plaintiff,

v.

Sears, Roebuck & Company and Sears National Bank, Defendants.

Melanie Velleco, Plaintiff,

v.

Sears, Roebuck & Company and Sears National Bank, Defendants.

Blanche Sroka, Plaintiff,

v.

Sears, Roebuck & Company and Sears National Bank, Defendants.

Vincent Kowal and Kathleen Kowal, Plaintiffs,

v.

Sears, Roebuck & Company; Sears National Bank; Stephen J. Shechtman; Shechtman & Halperin; Preston W. Halperin; Joseph S.U. Bodoff; Douglas A. Giron; Thomas S. Carlottol; Holly L. Raiano; Dykema Gossett, PLLC, Defendants.

Civ.A. Nos. 99–170–L, 99–367–L, 99–351–L, 00–447–L, 99–355–L.

United States District Court, D. Rhode Island.

Feb. 7, 2002.

Christopher M. Lefebvre, Pawtucket, RI, for Plaintiffs.

Cathleen Combs, Edelman, Combs & Latturner, Chicago, IL, for Arruda and Kowal.

Howard A. Merten, Vetter & White, Providence, RI, Bruce M. Berman, Wilmer, Cutler & Pickering, Washington, DC, for Sears Roebuck & Sears National Bank.

Sheila High King, CharCretia C. DiBartolo, Cetrulo & Capone, Providence, RI, for Shechtman & Halperin, Preston W. Halperin, Stephen J. Shechtman, Joseph S.U. Bodoff, Douglas A. Giron, Carlotto, Raiano, Gossett, PLLC.

Sheryl Serreze, Office of U.S. Trustee, Providence, RI, Trustee.

### OPINION AND ORDER

LAGUEUX, Senior District Judge.

This action originally consisted of five different complaints that, after multiple consolidations, have merged into one. The central claim before the Court, and the claim common to all plaintiffs, stems from Title 11 of the United States Bankruptcy

Code. Bankruptcy Reform Act of 1978, 11 U.S.C. § 524 (1994). Plaintiffs, five individuals, all former customers of Sears Roebuck & Co. and former debtors in bankruptcy, claim that defendants Sears Roebuck & Co. and Sears National Bank (both hereinafter "Sears") violated Title 11 by entering into redemption agreements with them without bankruptcy court approval and after each had been discharged from his or her bankruptcy. Two plaintiffs (the Kowals) make additional claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, and state law. Plaintiffs claim to represent an, as yet, uncertified class.

Defendants have moved for dismissal pursuant to Rule 12(b)(6) on all claims and have also presented a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction all state law claims. This Court holds that the redemption agreements did not violate the Bankruptcy Code or any discharge order. Additionally, the Court holds that bankruptcy court approval of the redemption agreements was not required by the Bankruptcy Code. The Court further holds that plaintiffs have failed to present an actionable FDCPA claim. Defendants' motion to dismiss is granted as to all federal claims. With the federal claims dismissed, the Court declines to assume supplemental jurisdiction over any remaining state law issues. Therefore, the state law claims are dismissed, without prejudice, for lack of subject matter jurisdiction.

## I. BASIS OF JURISDICTION

■ Pursuant to 28 U.S.C. § 1334, this Court has jurisdiction over all civil proceedings arising under, arising in or related to cases under Title 11. 28 U.S.C. § 1334(b); *Bessette v. AVCO Fin. Servs. Inc.*, 240 B.R. 147, 152–53 (D.R.I.1999) *aff'd in part, vacated in part*, 230 F.3d 439

(1st Cir.2000). Federal district courts have original, but not exclusive, jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(b). Jurisdiction is shared with the bankruptcy court, an arm of the district court, although the bankruptcy court can only hear cases that derive from the federal district court's bankruptcy jurisdiction. 28 U.S.C. § 1334(b); 28 U.S.C. § 157. Although cases are often referred to the bankruptcy court for resolution, the district court may withdraw its reference to the bankruptcy court and hear the case itself. 28 U.S.C. § 157(d). Because the complaints raise issues of bankruptcy law, this Court has jurisdiction.

■ The FDCPA has its own specific jurisdictional provision, stating that an action to enforce liability under its provisions may be brought in United States District Court. 15 U.S.C. § 1692k(d). The state law claims are brought as a matter of supplemental jurisdiction. 28 U.S.C. § 1367.

## II. STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS

■ In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. Fed.R.Civ.P. 12(b)(6); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). Because a 12(b)(6) motion often comes in the early stages of the litigation, dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley v. Gibson*,

355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

 A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule (8)(a), setting forth the federal system of notice pleading. In most instances, notice pleading requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). Allegations of fraud or mistake, however, must be pled with particularity. Fed. R. Civ. P. 9(b); *see also Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir.2000) (listing claims that must be pleaded with greater specificity). The complaint, as a precursor to discovery, need not state all the possible facts at issue. As with any document filed with the Court, the complaint must adhere to the standards of Rule 11. Fed.R.Civ.P. 11(b). The attorney must attest that he or she has a good faith basis for making allegations after a reasonable inquiry. *Id.*

 In a Rule 12(b)(6) motion, the Court may examine only the pleading itself. In a notice pleading system, the pleading serves to inform the defendant of the claims made against him or her. *Langadinos,* 199 F.3d at 72–73. It need not state every possible issue or fact. If the pleading is simply inartful or in improper form, a Rule 12(b)(6) motion is inappropriate. If the pleading is so vague that a party cannot reasonably respond, in keeping with Rule 8(a)'s thrust of notice pleading, the proper recourse would be a motion for a more definite statement. Fed. R.Civ.P. 12(e). Although a pleading serves primarily to put the other party on notice, a plaintiff must rely on more than subjective characterizations or conclusory descriptions. *See Correa–Martinez,* 903 F.2d at 52–53. Additionally, the Court need not accept unsupported conclusions or interpretations of law. *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). If the pleading fails to make out a legal claim upon which relief can be granted or fails to allege any facts that would support a legal claim, the pleading is insufficient and should be dismissed. *See Correa–Martinez,* 903 F.2d at 52–53.

 Since a Rule 12(b)(6) motion usually comes at the outset of litigation, the Court is often hesitant to grant dismissal. If more discovery is necessary to develop a factual record, dismissal under Rule 12(b)(6) would be premature. *See Washington Legal Found.,* 993 F.2d at 971. If the factual record fails to develop, the Court may, upon petition, grant a motion for summary judgement, dismissing all or part of the case. *See* Fed.R.Civ.P. 56. Simply because the Court is hesitant to dismiss a claim in the early states of litigation, however, does not mean that there are not circumstances where the Court can and should act. Rule 12(b)(6) weeds out those allegations that, even with further factual development, will never grow into sustainable claims under the law. As the First Circuit stated, "[i]n the menagerie of the Civil Rules, the tiger patrolling the courthouse gates is rather tame, but 'not entirely … toothless.'" *Correa–Martinez,* 903 F.2d at 52 (quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). Therefore, the Court must determine whether plaintiffs' complaint is sufficient to get them through the courthouse gates.

## III. PROCEDURAL HISTORY

This action originally consisted of five separate actions that now have been consolidated. Plaintiffs Arruda, Velleco, and Sroka, each individually filed a complaint in the Bankruptcy Court of this District alleging violations of the Bankruptcy Code and a claim of unjust enrichment. Arruda and Velleco together filed additional claims

in this Court alleging Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law violations. In August, 1999, the individual Arruda and Velleco bankruptcy complaints were consolidated with their jointly filed RICO claims. In September, 1999, Sroka's complaint was also consolidated with the Arruda and Velleco actions. Upon motion by defendants, the Court withdrew the reference to the Bankruptcy Court.

In a December 1, 2000 order, the Court dismissed all claims in the Arruda/Velleco action arising under RICO, as well as all state law claims. The dismissed state law claims include Count III, an unjust enrichment claim, in the Arruda/Velleco/Sroka complaints originally filed in Bankruptcy Court. Therefore, as to Arruda, Velleco and Sroka, the only remaining claims trace back to Counts I and II of their original complaints filed in the Bankruptcy Court.

The Kowals' amended complaint was filed directly in this Court. The Kowals claim violations of the Bankruptcy Code, the FDCPA and state law. On December 1, 2000, this Court consolidated the Arruda/Velleco/Sroka action with the Kowals' case.

Prior to the last consolidation, defendants filed a motion to dismiss the Kowals' amended complaint. Subsequent to the consolidation order, defendants filed a motion to dismiss the remaining bankruptcy claims in the Arruda/Velleco/Sroka action. On April 10, 2001, the Court held a hearing on both motions to dismiss. Those motions to dismiss are now in order for resolution.

## IV. PLAINTIFFS' ALLEGATIONS AS STATED IN THE COMPLAINTS

On a Rule 12(b)(6) motion, the Court may only consider the facts that the plaintiff alleges in the complaint. *Correa–Martinez*, 903 F.2d at 52. Here are the facts as plaintiffs allege in support of their respective claims.

A. *Vincent and Kathleen Kowal:* The Kowals bought a sofa and a gas range, on credit, from Sears. Sears had a security interest in those items. Some time after that purchase, the Kowals each filed for bankruptcy protection under Chapter 7 in the Bankruptcy Court of this District. In the bankruptcy proceeding, both Kowals listed a debt to Sears for personal items. The Kowals' bankruptcies were discharged on November 4, 1999. On February 25, 2000, Shechtman & Halperin, a law firm, filed a replevin action in state court, to recover the collateral goods, on behalf of Sears against Mrs. Kowal. The Kowals do not dispute that Sears possessed a secured interest in the property. At the same time, Sears filed a separate, but similar, action against Mr. Kowal. The following month, in March, 2000, Shechtman & Halperin sent Mrs. Kowal a letter offering to allow her to retain the items that were the subject of the replevin action if she paid Sears the fair market value of the items, as ascertained by certain valuation tables. At the same time, Mr. Kowal was sent a similar letter, to the same effect. It is not clear from the complaint what property Mr. Kowal purchased from Sears on credit.

In response to the letter to Mrs. Kowal, Mr. and Mrs. Kowal signed a redemption agreement and paid $840.44. The redemption agreement was not filed with or approved by the Bankruptcy Court. Mr. Kowal did not enter into a redemption agreement with Sears concerning his property. Sears repossessed Mr. Kowal's property. No notice was given of the sale of the collateral and no sale was conducted.

In the amended complaint, those plaintiffs allege that Shectman & Halperin and

other defendants violated the FDCPA.[1] Essentially, in Count I the Kowals claim that the law firm used inaccurate valuation tables and that the redemption agreement should have been approved by the Bankruptcy Court. By doing this, plaintiffs argue, the law firm engaged in false or misleading representations, and unfair practices, violating § 1692e and § 1692f of the FDCPA.

In Count II, the Kowals make the state law claim that Sears violated Article 9 of the Uniform Commercial Code ("UCC") by repossessing collateral and failing to dispose of it pursuant to the UCC's notice and sale procedures. In Count III they allege that this failure to comply with the UCC was an unlawful conversion under state law.

In Count IV, the Kowals claim against all defendants that the redemption agreements and the valuation schedule violated 11 U.S.C. §§ 524, 105.

B. *Dorothy Arruda:* Arruda purchased a range hood, lawn mower and sewing machine from Sears using a Sears credit card. Sears had a security interest in those items. Subsequently, Arruda filed for Chapter 7 bankruptcy protection on July 7, 1998. Her bankruptcy was discharged on October 15, 1998. Her home mortgage was foreclosed prior to February 18, 1999. The range hood went to the mortgagee, and Arruda gave away the lawn mower. On February 18, 1999, plaintiff only possessed the sewing machine. Arruda later executed a redemption agreement with Sears and paid the amount that Sears stated was the fair market value for the items. Sears did not secure a writ of replevin from Rhode Island District Court.

In Count I of her complaint, Arruda claims that the redemption agreement should have been filed with the Bankruptcy Court under § 524(c). In Count II she alleges that Sears violated § 524(a)(2), the bankruptcy discharge injunction.

C. *Blanche Sroka:* Sroka filed for bankruptcy on March 24, 1998, and her bankruptcy was discharged on July 2, 1998. Prior to declaring bankruptcy, Sroka purchased a refrigerator and microwave from Sears using a Sears credit card. Sears had a security interest in those items. Sears filed a replevin action in the Rhode Island District Court and a writ was issued on October 30, 1998. In response to a letter from Sears' attorney, Sroka paid Sears $769.49 and signed a redemption agreement. Sroka's substantive allegations against Sears are identical to Arruda's claims.

D. *Melanie Velleco:* Velleco filed for bankruptcy on February 20, 1998, and she was discharged on May 28, 1999. Prior to declaring bankruptcy, Velleco purchased a refrigerator from Sears on a Sears credit card. Sears had a security interest in the refrigerator. Sears received a writ of replevin from state district court on November 19, 1998. Sears then mailed Velleco a letter asking her if she wanted to redeem the item for $303.99. She paid Sears the sum and Sears mailed her a redemption agreement, which Velleco signed and returned. Velleco's substantive allegations against Sears are identical to those presented by Arruda and Sroka.

## V. ANALYSIS OF PLAINTIFFS' CLAIMS

Plaintiffs' claims can be divided into three groupings. First, all five plaintiffs

---

1. The other defendants include Preston W. Halperin, Stephen J. Shechtman, Joseph S.U. Bodoff, Douglas Giron, Thomas Carlottol, and Dykema Gossett, LLC. Plaintiffs allege that these other defendants were involved in violations of the FDCPA with Shectman & Halperin. For purposes of clarity, this writer will refer only to Shectman & Halperin throughout the opinion.

allege violations of bankruptcy law. Second, Mr. and Mrs. Kowal allege violations of the FDCPA. Third, Mr. and Mrs. Kowal allege state law violations. The Court will address the claims in that order.

## A. ALLEGED BANKRUPTCY LAW VIOLATIONS

### 1. Background

■ The goal of bankruptcy is to give a debtor a chance for a fresh start, by resolving claims against the debtor. The basic process is that a person petitions the bankruptcy court for protection from creditors. After the assets and liabilities have been determined, and the creditors have been paid to the extent possible, the bankrupt is discharged. A discharge order is issued, and the debtor is generally relieved from all pre-petition debt and creditors are enjoined from taking action to collect discharged debts. *See, e.g., Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 444 (1st Cir.2000).

■ When a person files for bankruptcy, he or she has a number of responsibilities and options. The debtor is required to file a list of creditors and a schedule of assets and liabilities. 11 U.S.C. § 521(1). This schedule should include consumer debts secured by property. 11 U.S.C. § 521(2). If the schedule does include such debts, then the debtor has thirty days to file with the clerk a statement of whether he or she intends to surrender or retain the property, whether to exempt the property, and whether to redeem or reaffirm the debt. 11 U.S.C. § 521(2)(a).

A bankruptcy discharge, however, only covers personal liability of the debtor.

*Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam—while leaving intact another—namely an action against the debt in rem."). A creditor, after the bankrupt has been discharged, cannot proceed against the debtor personally for debts incurred prior to the bankruptcy filing or discharge.[2] 11 U.S.C. § 524(a). There are limited exceptions to this discharge rule—for example, a debtor remains liable for taxes. 11 U.S.C. § 523(a).

■ Bankruptcy law treats debts for which the debtor is not personally liable differently. These are debts where the creditor has a secured interest in property. When a claim is secured by collateral in the estate, the creditor has a secured claim to the value of the collateral and an unsecured claim for any deficiency. 11 U.S.C. § 506(a); *In re Tripplett,* 256 B.R. 594, 596 (Bankr.N.D.Ill.2000). If the creditor's only recourse is against the property, the debtor is not personally liable-he or she does not owe the creditor any money. To a lay person, however, give me your money or your refrigerator probably has little significant difference. Indeed in some respects, the refrigerator, and the potential loss of it, may be more important to the debtor, as a modern necessity, than a certain amount of cash.

■ The Bankruptcy Code is not insensitive to the fact that the necessities of everyday modern living may not be protected by a discharge of personal liability. Therefore, under the Code, a debtor is allowed to exempt from the estate, and

---

**2.** 11 U.S.C. § 524(a)(2) states: "(a) A discharge in a case under this title—... (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

thus shield from creditors, items deemed necessities. These items include a certain amount for a motor vehicle, prescribed health aids, and professional tools of the trade. 11 U.S.C. § 522(d)(1)–(11). Of importance here, the Code allows up to $4,000 in aggregate value of household furnishings, household goods, appliances, clothes and books to be exempted. 11 U.S.C. § 522(d)(3). The property exempted is not part of the estate and, therefore, the property cannot be sold to satisfy the demands of the creditors. 11 U.S.C. § 522(b). Exempted property is also not accessible to creditors on personal liability grounds. 11 U.S.C. § 522(c).

■■■■ A debtor seeking to retain personal property secured by a creditor may reaffirm or redeem a debt. 11 U.S.C. § 521(2). A debtor seeking to retain property is required to make this decision in accordance with the Bankruptcy Code. *In re Burr*, 160 F.3d 843, 849 (1st Cir.1998). In the case of reaffirmation, the debtor and creditor agree to a new payment plan, and the debtor remains personally liable to the creditor. The reaffirmation agreement must be made prior to the discharge, in accordance with 11 U.S.C. § 524, and must be filed with the court. *Bessette*, 230 F.3d at 444.

■■■■ During bankruptcy, if the debtor chooses to enter into a redemption agreement, the debtor may pay a determined amount to keep the property and release the creditor's security interest.[3] 11 U.S.C. § 722. Under § 722, the debtor may force redemption for tangible personal property intended for personal, family or household use that has been exempted

or abandoned. Redemption is generally seen as a benefit to the debtor, because he or she can redeem the property for its fair market value, not for the amount of the debt owed to the creditor. *See Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 363 (E.D.N.Y.2001); *In re Cruseturner*, 8 B.R. 581, 588 (Bankr.D.Utah 1981). Upon redemption, the debtor owns the property free and clear of any claims by the creditor. If a debtor exempts property, but does not enter into a redemption or reaffirmation agreement, a creditor with a valid security interest may proceed against the property itself, in rem. *See Spivey*, 265 B.R. at 361.

■■■■ If a discharge order is violated, or there are other violations of the Bankruptcy Code, the court may invoke § 105(a) to fashion an equitable remedy. *Bessette*, 230 F.3d at 444–45. Section 105(a) provides statutory contempt powers, including the power to order the payment of damages by an offending party. *Id.*

**2. Violation of Bankruptcy Discharge**

■■■■ The redemption agreements here do not violate the bankruptcy discharge order. A bankruptcy discharge only relieves a debtor of personal liability. 11 U.S.C. § 524(a)(2). In this case, none of the plaintiffs were personally liable. Each plaintiff had gone through bankruptcy and was discharged, thus releasing him or her from any personal liability to Sears.

Sears only sought to recover property in which it had a security interest. When each of the plaintiffs purchased these household goods from Sears, on credit, Sears retained a security interest in the

---

**3.** 11 U.S.C. § 722 states: "An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consum- er debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secure claim of such holder that is secured by such lien."

property. Sears continued to have a security interest in the property because the debtor had neglected to pay the full amount owed for the property. There is no allegation in the complaints that Sears did not have a valid security interest in the property. In fact, plaintiffs acknowledge that Sears claimed to have a security interest in the property and they do not challenge that assertion. Therefore, each plaintiff's claim fails as a matter of law. Since Sears was not attempting to collect a personal liability owed to it by the plaintiffs, Sears was not violating the bankruptcy discharge order.

Even if plaintiffs were to question the validity of Sears' purported security interest, they are in the wrong forum. Plaintiffs should have raised that issue in the state court replevin proceedings. By declining to do so, plaintiffs have agreed that Sears had a valid security interest.

The redemption agreements signed by the plaintiffs, accompanied by payment of the fair market value to Sears, resolves the replevin action by releasing Sears' security interest. It is, effectively, a settlement agreement of Sears' state law claim for replevin. This Court is hesitant to disrupt settlement agreements because, in Rhode Island, courts favor the settlement of litigation disputes. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F.Supp.2d 317, 324–25 (D.R.I.1999), *aff'd*, 217 F.3d 8 (1st Cir.2000) (citing *Homar, Inc. v. North Farm Assocs.*, 445 A.2d 288, 290 (R.I.1982)). Settlements are contracts and are binding on the parties. *Id.* Here, the plaintiffs entered into an agreement, allowed by law, to release a security interest, preventing the valid repossession of property. The parties settled the claim. *See id.*

Furthermore, Mr. Kowal never entered into a redemption agreement, therefore, he has no basis on which to claim that the agreement violated the discharge order in his bankruptcy. Plaintiffs Mrs. Kowal, Sroka, and Velleco all entered into redemption agreements after Sears was granted a writ of replevin by the Rhode Island District Court. They conceded that Sears had a valid security interest and settled the replevin action with the redemption agreement. *See id.* In the case of plaintiff Arruda, Sears did not secure a writ of replevin from state court. Nevertheless, the only defense to Sears's repossession is that it lacked a security interest, and was proceeding against her personally. In her complaint she does not challenge Sears' security interest. Therefore, her claim fails as well.

### 3. Requirement of Bankruptcy Court Approval

 The redemption agreements at issue do not violate bankruptcy law. Unlike a reaffirmation agreement, there are no statutory requirements that a redemption agreement be presented to the bankruptcy court for its approval. 11 U.S.C. §§ 722; 524(c)(2). During the course of bankruptcy, a debtor has the right to initiate a redemption agreement to resolve secured debts. 11 U.S.C. § 722. There is no obligation, however, that the agreement be presented to the bankruptcy court before it is effective, even if the agreement is reached prior to the discharge of the bankruptcy. *Id.; see Spivey*, 265 B.R. at 365–67. Here, all of the redemption agreements were entered into after the discharge of the respective bankruptcies.

 The nub of plaintiffs' argument is that redemption and reaffirmation agreements should be treated the same under the Bankruptcy Code. Despite plaintiffs' contention to the contrary, the statutory provisions addressing reaffirmation agreements and redemption agreements could not be more different. In unambiguous

language, Congress has treated them distinctly, affording a debtor more protection when executing a reaffirmation agreement than a redemption agreement.

 The statutory distinction is supported by the policy goals that Congress considered when enacting the Bankruptcy Reform Act of 1978. *Compare, e.g.,* 124 Cong. Rec. H11115 (1978) (statement Rep. Butler)("In general, the individual debtor is given increased protection and afforded a meaningful fresh start.... Strict limits are placed on reaffirmation of consumer debts.") *with* S. Rep No. 95–989, at 95 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5881 ("This right to redeem is a very substantial change from current law. To prevent abuses such as may occur when the debtor deliberately allows the property to depreciate in value, the debtor will be required to pay the fair market value of the goods."). If circumstances change or have changed, Congress can restrict the use of redemption agreements. Until that time, this Court cannot grant a debtor more protection than is required under the Bankruptcy Code.

 Reaffirmation and redemption agreements impose significantly different obligations on the parties to the agreement. Reaffirmation agreements occur when debtor and creditor renegotiate the terms of the debt created prior to discharge. The debtor is personally liable for the renegotiated debt. Thus, a reaffirmed debt resembles the personal liability that existed prior to discharge, and is an exception to the rule that bankruptcy discharges all pre-existing personal liability. Additionally, the amount of the reaffirmed debt is negotiated by the parties.

 Because the creditor may pressure the debtor into assuming personal liability on unfavorable terms, defeating bankruptcy's goal of offering a fresh start to the debtor, reaffirmation agreements must be approved by the bankruptcy court. *See* 11 U.S.C. § 524; *Bessette,* 230 F.3d at 444. This requirement reflects a decision by Congress that debtors need additional protection prior to entering into reaffirmation agreements. *See, e.g.,* H.R.Rep. No. 95–595, at 117 (1977), U.S.Code Cong. & Admin.News 1977, pp. 5963, 6077 ("Creditors have developed techniques that enable them to avoid the effects of a debtor's bankruptcy, and bankrupts have suffered accordingly. Frequently, they come through bankruptcy littler [sic] better off than they were before.... Reaffirmations [and other techniques] have all contributed to the consumer debtor's post-bankruptcy plight."). In this regard the Code is quite paternalistic towards the debtor.

 In contrast, redemption agreements are often more favorable to the debtor than to the creditor. *See Spivey,* 265 B.R. at 363; *Cruseturner,* 8 B.R. at 588–89. In the Code, redemption is a right that a debtor has to secure his or her possession of personal household items. 11 U.S.C. § 722. A debtor may demand that a creditor accept redemption instead of repossessing the property. *Id.* The redemption amount is set by law, not negotiated as with reaffirmation agreements. *Id.* It is not the amount of the secured claim but rather it is the fair market value of the item that is paid. Because the amount paid for the item is its fair market value, and not the debt owed, the creditor most likely experiences a loss on the sale of goods. *See, e.g., Cruseturner,* 8 B.R. at 588 ("Section 722 gives the debtor the right to redeem by payment of the amount of the allowed secured claim, or the market value of the property, which may often be significantly less than the amount due.").

 For this reason, redemption is seen as advantageous to the debtor and Congress did not impose the same paternalistic protections for the debtor as in the case of reaffirmation agreements. In fact, in the Bankruptcy Reform Act of 1978, Congress sought to strengthen protection for the creditor in light of the debtor's right of redemption. *See, e.g.,* S.Rep. No. 95–989, at 95, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5881 (expressing concern about potential harm to creditors). Most importantly, the debtor is assuming no personal liability under a redemption agreement that could thwart the "fresh start" gained by the bankruptcy proceeding. The bankrupt is paying an amount to remove the creditor's secured interest. During the bankruptcy proceeding, if there is a dispute over value, the debtor has the ability to bring questions of value to the bankruptcy court.[4] Fed. R. Bankr.P. 6008. This privilege is afforded only to the debtor, trustee, or debtor in possession and is wholly consistent with ·the focus of redemption as a tool of the debtor. *Id.* It is not a requirement that the bankruptcy court approve redemption agreements. *Spivey,* 265 B.R. at 373.

 In their memorandum of law, plaintiffs cite three bankruptcy court decisions in support of their contention that bankruptcy court approval is required. This Court, as an appellate court in bankruptcy, is under no obligation to follow these decisions. At the outset, it is important to note that in all three cases, the factual scenarios differ from the facts in this case. Each of those decisions dealt with a situation occurring prior to the discharge and where no replevin proceeding had been brought in state court. The

reasoning of *In re Spivey* was rejected by the District Court. 230 B.R. 484 (Bankr. E.D.N.Y.1999), *rev'd, Spivey,* 265 B.R. 357. The District Court, in reversing the Bankruptcy Court, held that redemption agreements did not require court approval even if entered into prior to discharge. *Spivey,* 265 B.R. at 373. *In re White* concerned a local rule of the District of Vermont requiring bankruptcy court approval of redemption agreements. 231 B.R. 551, 558–59 (Bankr.D.Vt.1999). No such local rule is in existence here. *In re Lopez* did ostensibly require bankruptcy court approval of redemption agreements. 224 B.R. 439 (Bankr.C.D.Cal.1998). The facts, however, in that case are quite distinct. Sears moved for the approval of a redemption agreement for goods that had not yet been conclusively exempted by the Bankruptcy Court. *Id.* at 442. Because § 722 only allows exempted or abandoned goods to be redeemed during bankruptcy proceedings, the redemption agreement was premature. *See id.* Here, the redemption agreements were entered into not prematurely, but after the discharge. Although the Bankruptcy Court in *Lopez* reasoned that approval was required, this Court does not find its reasoning persuasive. First, that conclusion was unnecessary to the outcome of the case. Second, the Bankruptcy Court's conclusion is not supported by the plain meaning of the text of § 722. *United States v. Rivera,* 131 F.3d 222, 224 (1st Cir.1997) ("When the plain meaning is clear on its face, the sole function of the courts is to enforce [the statute] according to its terms.") (citations omitted).

The text of the statute and corresponding rule only discuss the rights of the

4. Fed. R. Bankr.P. 6008 states: "On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemp-

tion of property from a lien or from a sale to enforce a lien in accordance with applicable law."

debtor to force redemption when the creditor uses the judicial power of the bankruptcy court. *See* 11 U.S.C. § 722. The statute does not require approval, although the rule does offer protection for the debtor by allowing him or her to petition for a hearing on valuation. *See id.* There is a sensible reason for this—a debtor has a responsibility to list secured interests separately from unsecured property that might be used by the bankruptcy court to discharge the debtor's outstanding debts. 11 U.S.C. § 521(2). By listing these debts as secured, the secured creditor is given notice prior to the discharge of the bankruptcy. A creditor might then attempt to repossess the collateral property before the property is sold to satisfy creditors. To prevent repossession, if the goods are exempted or abandoned, the debtor could force redemption on the creditor. 11 U.S.C. § 722. Hence, redemption is a tool of the debtor. Because the Bankruptcy Code balances the interests of the debtor and the creditor, § 722 only permits redemption of personal or household items.

In this case, the redemption agreements were entered into after the bankruptcy discharge. Although it was their right, the debtors did not redeem the property under § 722 prior to discharge. Therefore, Sears, having a secured interest in the property, retained the right to repossess the property. For all but one plaintiff, Arruda, Sears pursued the replevin action in state court, and then contacted the debtor asking him or her if he or she would pay a proposed amount to redeem the collateral debt and retain the property.

Plaintiffs argue in their memorandum of law that Sears laid in wait for the debtor, pouncing only after the discharge had been completed, to impute malicious motivations to Sears. Sears, however, does not have much to gain from lying in wait. The debtor might sell the property to satisfy other debts, forcing the creditor, whose only right is against the property, to locate the property to retrieve its interest. Furthermore, as the amount that can be recovered is only the value of the property, its value will depreciate even more as time passes.

For the preceding reasons, this Court unequivocally holds that there is no statutory requirement that a redemption agreement be approved by the bankruptcy court. Therefore, in this case all plaintiffs have failed to state a claim upon which relief can be granted under bankruptcy law.

■ Furthermore, plaintiff Mr. Kowal never entered into a redemption agreement, therefore, he can not claim that his non-existent agreement needed to be approved by the bankruptcy court. Plaintiff Arruda claims that Sears cannot enter into a valid redemption agreement when she is no longer in possession of two of the three items in which Sears had a secured interest. The range hood went with her house as it was disposed of by the bankruptcy proceeding and she gave away the lawnmower. The lack of possession is a defense to a replevin action in state court and not grounds for invalidating the contract. Her proper recourse would have been to wait for Sears to file a replevin action and raise non-possession as a defense. A replevin proceeding is an in rem proceeding-if a person does not possess the property, it cannot be turned over.

For the foregoing reasons, the bankruptcy law claims of the plaintiffs are dismissed in their entirety. The Kowals have two remaining claims.

## B. ALLEGED VIOLATIONS OF THE FDCPA

■ The Kowals claim that the law firm of Shechtman & Halperin violated the

FDCPA when it notified plaintiffs that Sears would repossess certain property unless the parties entered into redemption agreements.[5] The FDCPA is a consumer protection statute enacted to provide consumers a remedy after they have been subjected to abusive, deceptive and unfair debt collection practices. 15 U.S.C. § 1692. The FDCPA does not apply to creditors directly, but applies to debt collectors, in this case, the lawyers. 15 U.S.C. § 1692a(6).

▆▆▆ Plaintiffs' contentions can be boiled down to two basic arguments. First, that by proposing redemption agreements, defendants made false representations concerning the property in question. Those misrepresentations were statements and/or intentions that they could take the property after bankruptcy discharge and enter into redemption agreements without bankruptcy court approval. As discussed above, the parties do not need bankruptcy court approval to enter into redemption agreements nor are their actions a violation of the bankruptcy discharge order. Therefore, defendants made no false representations about the property in violation of the FDCPA.

Plaintiffs advance a second theory to support an alleged violation of the FDCPA. Plaintiffs claim that the valuation tables used by the defendants were bogus, that the money paid was in excess of the true value of the collateral, and that the defendants did not intend to dispose of the collateral pursuant to the UCC's notice and sale requirement.

Mr. Kowal did not enter into a redemption agreement, but returned the property to Sears, so there can be no allegation that defendants obtained any sum from him that was in excess of the value of the collateral.

▆▆▆ As to the claim that the valuation tables were bogus, defendants make several arguments as to why the FDCPA does not apply to this situation. First, defendants argue that plaintiffs are bound by the remedies imposed by the Bankruptcy Code (i.e., contempt) and therefore, cannot bring an FDCPA action for damages. There are several problems with defendants' arguments on this score. As discussed above, the redemption agreements do not violate the Bankruptcy Code, therefore a possible FDCPA action cannot be limited by a non-existent Bankruptcy Code remedy. Additionally, as this Court held in *McGlynn*, an FDCPA claim regarding post-discharge conduct that does not impact in any way the bankruptcy estate does not fall under Title 11's jurisdictional umbrella. *See McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 584 (D.R.I.1999). Because any remedies gained under the FDCPA inure to the plaintiff and not to

---

**5.** Plaintiffs allege violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A),(4),(5),(10) and 15 U.S.C. § 1692f. The pertinent parts of § 1692e state: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the forgoing, the following conduct is a violation of this section: ... (2) The false representation of—(A) the character, amount or legal status of any debt; ... (4) The representation or implication that non-payment of any debt will result in the arrest or imprisonment of any person or the seizure,

garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action....(5) The threat to take any actions that cannot legally be taken or that is not intended to be taken .... (10) the use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information from a consumer."

Section 1692f states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

the bankruptcy estate, they are separate actions. *See id.*

■■■ Second, defendants argue that there is no "debt" present in the case that falls under the meaning of debt in the FDCPA. In other words, defendants argue that the FDCPA cannot be applied to post-discharge debt collection practices that seek to recover property and not impose personal liability.

Congress has defined "debt" in the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are subject to the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgement." 15 U.S.C. § 1692a(5). Courts have construed this term broadly. For example, the Seventh Circuit held that a debt was "any obligation to pay arising out of a consumer transaction". *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1323 (7th Cir.1997) (holding that a dishonored check is a debt).

At one point the Kowals bought household consumer goods, on credit, from Sears. Sears retained a security interest in that property. Prior to the bankruptcy petition, any debt collection attempt by Sears would be governed by the FDCPA. The Kowals were personally liable to Sears for any outstanding balance and, as they failed to pay the balance, Sears could have taken the property to satisfy the debt and proceed against the Kowals for any deficiency. After the discharge, the Kowals were no longer personally liable, but Sears could still repossess the property because the Kowals had not paid the debt. If there were no debt, Sears could not repossess. Therefore, the bankruptcy discharge, in effect, does not eliminate the debt, but discharges the personal obligation to pay money. If it eliminated the underlying debt, Sears could not repossess because the security interest would be satisfied.

The FDCPA, however, makes a subtle, but clear distinction. The debt that the FDCPA refers to is "an obligation for money." 15 U.S.C. § 1692a(5). Defendants did not make a demand for money, but a demand for goods. Plaintiffs state as much in their complaint. Furthermore, defendants had obtained a writ of replevin, after an in rem proceeding, establishing their interest in the property. The debtor has an opportunity to keep the goods by paying money. This type of debt collection, for goods, does not fall within the scope of the FDCPA. *See* 15 U.S.C. § 1692a(5).

Plaintiffs cite a federal decision from the district of California in support of their position. *Molloy v. Primus Auto. Fin. Servs.*, 247 B.R. 804 (C.D.Cal.2000). *Molloy*, however, concerned a reaffirmation agreement that was allegedly invalid and involved an obligation to pay money. *Id.* at 814. It has no relevance to the case at bar. Plaintiffs also cite an unpublished opinion from the District Court of Illinois. There, on a Rule 12(b)(6) motion, plaintiff contested the authority of the collector to repossess an item. Here, plaintiffs do not contest the validity of the debt, and Sears had secured a writ of replevin. Plaintiffs' case citations are not persuasive.

■■ At oral argument, plaintiffs' attorney made clear the crux of his position: Sears and its debt collectors pressure plaintiffs to pay money to Sears instead of repossessing the debtors property. Plaintiffs believe that the valuation tables are fraudulent and unconscionable, and that Sears will not negotiate. Plaintiffs are arguing that, in the interest of equity and fairness, the Court should expand the FDCPA beyond the plain meaning of the

statute. This Court declines that invitation. This ruling does not leave plaintiffs at the mercy of Sears. The proper recourse, however, is under state law. Article 9 of the UCC provides a statutory right to redeem collateral after it has been repossessed. If plaintiffs did not agree with the valuation tables, their recourse was to engage their state statutory right to redemption in state court. *See* R.I. Gen. L. § 6A–9–506 (1992).

## C. REMAINING STATE LAW CLAIMS

▆▆▆▆▆ Counts II and III of the Kowals' amended complaint alleges that Sears violated the notice and sale provisions of Article 9 of the UCC and forced an unlawful conversion. Although plaintiffs do not specifically cite the state statute, Rhode Island has codified Article 9 provisions for default in R.I.G.L. §§ 6A–9–501 through 6A–9–507. The Kowals' claim is purely a state law claim. This Court declines jurisdiction based solely on supplemental jurisdiction. Supplemental jurisdiction allows a federal court to hear both state and federal claims if they would ordinarily be expected to be tried in one judicial proceeding. 28 U.S.C. § 1367(a). Supplemental jurisdiction, however, is discretionary. *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 564 (1st Cir.1997). As 28 U.S.C. § 1367 states, the Court may decline jurisdiction if the Court has dismissed all claims over which it has original jurisdiction.

Here, because the Court has dismissed all federal claims, the Court declines to retain jurisdiction over the remaining state law claims. *See id.* Therefore, the state law claims are dismissed without prejudice.

## CONCLUSION

Plaintiffs in this case, for whatever reason, failed to redeem property prior to the discharge of their bankruptcies. It was their right to redeem property and, if there was a dispute as to value, to seek review of that dispute in the bankruptcy court. Here, plaintiffs failed to redeem their property prior to discharge. In essence, they slept on their rights. Sears, as a creditor, legitimately sought to repossess the property. At that time, plaintiffs could either return the property or seek redemption. Most of them paid money to redeem, and now seek collaterally to attack their agreements in this Court. Plaintiffs, however, had other, superior options. Plaintiffs could have resorted to the bankruptcy court prior to the discharge. Plaintiffs could have also contested the replevin proceedings in state court. Plaintiffs could have attempted to petition the bankruptcy court to review the value at issue under Rule 6008 prior to signing and paying on the agreement. Plaintiffs exercised none of these options. Instead, plaintiffs argue that the agreements are invalid. This Court concludes that plaintiffs have asserted no basis for that conclusion.

For the foregoing reasons, defendants' motion to dismiss for failure to state a cause of action is granted as to all bankruptcy law and FDCPA claims. Therefore, the Arruda, Velleco, and Sroka complaints are hereby dismissed in their entirety. Defendants' motion to dismiss Counts I and IV of the Kowals complaint is also granted for failure to state a cause of action. Defendants' motion to dismiss Counts II and III of the Kowals complaint, the state law claims, is granted, without prejudice, for lack of subject matter jurisdiction. The Clerk shall enter judgement for defendants in all cases as indicated above, forthwith.

It is so ordered