LUBBOCK GLASS & MIRROR COM-
PANY, Plaintiff,

v.

PITTSBURGH PLATE GLASS COM-
PANY, Defendant.

Civ. A. No. 5-423.

United States District Court,
N. D. Texas,
Lubbock Division.

May 14, 1970.

George McCleskey, Don Graf, Nelson, McCleskey & Harriger, Lubbock, Tex., for plaintiff.

Tom S. Milam, Joe Nagy, Crenshaw, Dupree & Milam, Lubbock, Tex., John O'Connor, Pittsburgh, Pa., for defendant.

## ORDER

WOODWARD, District Judge.

Prior to announcements by the parties at the commencement of the trial, Defendant moved to strike Plaintiff's allegations of price discrimination under the Robinson-Patman Act, 15 United States Code § 13, and moved for entry of summary judgment in favor of Defendant in regard to the Robinson-Patman claims. The Court held in abeyance any rulings on such motions and the trial was then commenced and Plaintiff presented its case in full. At the close of Plaintiff's case, Defendant again renewed its motions to strike and for summary judgment in the form of a motion for instructed verdict.

In regard to these motions, Plaintiff has claimed that the prices at which Defendant sold its goods and merchandise were lower than the prices exacted by Defendant for the same type and kind of goods in other parts of the United States and that this constituted price discrimination under the Robinson-Patman Act. In particular, Plaintiff has referred to the sale of glass, aluminum doors, frames, windows, and related items for use in commercial installed

contracts as being lower in the Lubbock area than in other parts of the United States. It is also Plaintiff's contention that the dominant nature of these contracts is a sale of commodities as defined under the Robinson-Patman Act. On the other hand, Defendant has claimed that the sales of these items by means of commercial installed contracts are not sales of commodities of like grade and quality as required by the Robinson-Patman Act. One commercial installed contract is unlike any other, Defendant has contended, and any seeming difference in price that might appear is the result of intangibles in the bidding business and in the very nature of the sale and installation contract, not the result of differences charged on tangible items.

After a thorough review of the record, the Court is of the opinion that Defendant's motions have merit in regard to Plaintiff's allegations under the Robinson-Patman Act. The evidence clearly supports Defendant's contentions. For example, Mr. Charles Shepherd, an employee of Plaintiff Company, testified as follows:

Q. Don't you have listed, after you figure up the price of $752.00, then you put "trip", $48.00, and it comes to $800.00?

A. That is in the file, yes, sir. But that is not quite the way the job went.

Q. What did you charge the folks?

A. We felt like—we charged them $745.00, I believe, or seven fifty-two, or something. I talked with the general contractor, and because of the nature of this particular job, as I have been trying to say, Mr. Milam, each and every job is different, and since this thing here had Therm-o-pane that had to be ordered from the factory, and everything else, it was going to take more than one trip over there to do it and the general contractor assured me that if we could take the trip off there, he would have it all ready and we could do it in one trip

and we wouldn't have to go back a second time.

Q. I see. All right.

A. That is why the $48.00 was in there, sir. It was for more than one trip. We had upped the price in the metal and glass to take care of the trip charge over there.

Q. All right, sir. Now, let me ask you, Mr. Shepherd, it is true in glazing jobs, or installed sales, whichever you want to call it, that each and every glazing job and each and every installed sale is different, is it not?

A. Yes, sir.

Q. And each of them is entirely different, or stands on its own bottom, as we might say, using the vernacular, isn't that right?

A. I would say each and every glazing job is different.

Q. And no glazing job can be said to be the same as another glazing job?

A. In the technical sense, that is correct, sir.

Q. All right, sir. And even though you might have glass and metal go into each job, the fact that you have installation in it makes each of them different, doesn't it?

A. Yes, sir, this is true. (Transcript, pp. 682–684)

This testimony, from one of Plaintiff's key employees, illustrates that each commercial installed contract, i. e., commercial installed sale or glazing job, is different. Although glass and metal are involved in each job, intangible items, such as installation, weather conditions, the architect or contractor in charge of the job and other intangibles make each job unique or different. The clear implication of these statements is that differentiation in price is much more likely to be occasioned by differences in intangible items rather than by possible discriminating pricing practices in regard to glass and metal.

Even if the glass and metal involved in these contracts, sales, or jobs are of

like grade and quality, each contract, sale or job is not. Furthermore, from the testimony of F. D. Mueller, president of Plaintiff Company, it is clear that each contract, sale, or job is a package deal, involving both material and labor. (Transcript, pg. 266) Material cannot be separated out and bid apart. (Transcript, pg. 266) In fact, from Mr. Mueller's testimony, it appears that there are many factors involved in a contract, sale, or job. For example, on cross examination, Mr. Mueller made the following replies:

Q. All right, sir. Now, in bidding, Mr. Mueller, and in bidding on jobs it is important for any bidder and for Lubbock Glass & Mirror to know or anticipate what competition he may have, is it not?

A. To a certain extent, yes.

Q. And the competition expected or the competitive nature of the market is important in determining what bid he submits, isn't it?

A. Yes, sir.

Q. Before we get into that very much, Mr. Mueller, I'd like to ask you some terms, please, sir, and maybe it might—so we will be using these terms.

What do you mean by "markup"?

A. That is a figure that is applied —We are speaking now—

Q. Of a glazing job, yes, sir.

A. —glazing job. Is a percentage applied to the cost of material and direct labor involved in the job.

Q. All right, sir. In other words, so we can be sure, it would be a percentage factor applied to the actual cost of the material to Lubbock Glass & Mirror plus the estimated amount of direct labor that you anticipate will be required for that job?

A. Yes, sir, and I would add to that it would still be the estimated cost of material, also.

Q. Yes, sir. I should have put that in because the estimated material cost may not be and many times is not the actual material cost, is that right?

A. I doubt whether it is possible to get the actual material cost.

Q. All right.

A. On a job of any size, anyway. You might if there was just one or two lights, but if it is a job involving several items and several trips, several sizes, well, it is impossible to tell just what the actual cost of your material is.

Q. Or the actual amount of material that you may have to use to finish it?

A. That's right. The glazier could go out with five lights on the truck and break two of them and come back and get two more. What are you going to do as actual cost when you have charged out the five lights as what you think is the actual cost?

Q. And even estimating for a bid, estimating the amount of labor in the job is quite difficult, too, isn't it?

A. Yes, sir. (Transcript, pp. 268–270)

At another point in his testimony, Mr. Mueller gave the following answers:

Q. Yes, sir. All right. Now, getting back to this bid what are some of the factors that enter into a bid that you submit, Mr. Mueller?

A. The type of job, the location of it, the contractors, the architects, the time of the year when we may think it is ready for performance, the availability of material; and I am sure there are more, but that is all I can think of off hand.

Q. Would the competition respect, would that enter into it?

A. Yes, sir.

Q. Would the size of the job enter into it?

A. Yes, sir. (Transcript, pg. 275)

On the basis of the testimony from Mr. Shepherd and Mr. Mueller, it clearly appears that commercial installed contracts such as those involved in this case are a combination of many ingredients,

none of which are subject to exact calculation. A difference in one ingredient could and probably would occasion a difference in the total price or bid. Apparently, someone calculating a bid for a commercial installed contract cannot even determine exactly the material costs involved. As Mr. Mueller indicated, job accidents such as glass breakage must be taken into account in some manner. All of these ingredients or factors are joined together to create a package deal which is the commercial installed contract. It is unrealistic to attempt to segregate several of these factors, such as glass and metal, from the package and then attribute variable prices between different contracts to these factors. From the evidence viewed as a whole, it is clear that different combinations of all the factors cause variations in prices in contracts. Further, there has been no attempt by Plaintiff in this case to isolate tangible factors and show how they alone contribute to price differences.

In light of the evidence, the Court finds no material issue exists with regard to the following facts:

(1) A commercial installed contract is a separate entity that cannot realistically be broken down into exact component parts.

(2) Each commercial installed contract is unique and different from every other one.

Under these circumstances, the Court is of the opinion that commercial installed contracts are not of "like grade and quality" as required by the Robinson-Patman Act. These requirements of "like grade and quality" mean that commodities must have similar characteristics before a charge of price discrimination under the Act can be maintained. Actual and genuine differences between products generally remove differential pricing of the two from the reach of the Robinson-Patman Act. Rowe, Price Discrimination Under the Robinson-Patman Act (1962) at 69. See also Central Ice Cream Co. v. Golden Rod Ice Cream Co., 184 F.Supp. 312 (N.D.Ill.1960), aff'd.

287 F.2d 265 (7th Cir. 1961). In this case, actual and genuine differences exist between commercial installed contracts and therefore Plaintiff cannot sustain a charge of price discrimination under the Robinson-Patman Act.

Some evidence and exhibits have been placed in the record by Plaintiff which might tend to show lower prices on materials by the Defendant in Lubbock as compared to its other branch offices. But this evidence is not sufficient, and in fact there is no evidence, to show that these were "commodities of like grade and quality." For the above reason and upon the additional grounds set forth in Defendant's motions, it is the opinion of this Court that Defendant's position and contentions are correct.

Therefore, Defendant's motion to strike the allegations of violation of the Robinson-Patman Act in this case and the Motion for Summary Judgment on such allegations are, after Plaintiff has rested its case, granted and no instruction or issue in connection with such violations will be submitted to the jury.