**In re COMPACT DISC MINIMUM ADVERTISED PRICE ANTI-TRUST LITIGATION.**

No. MDL 1361.

United States District Court, D. Maine.

March 28, 2001.

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

HORNBY, Chief Judge.

How much evidence of an illegal agreement must antitrust plaintiffs plead to avoid dismissal for failure to state a claim? By the time of trial or summary judgment, *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), requires the plaintiffs to have evidence that tends to exclude the possibility of merely unilateral conduct. But I conclude that they are not required to plead that evidence in their complaints. Ordinary notice pleading is still the standard against which to measure an antitrust complaint, and the amended complaints here are adequate. On the other hand, the plaintiffs do not adequately allege facts to support fraudulent concealment and thereby extend the statute of limitations. The defendants' motions to dismiss are therefore DENIED except with respect to the fraudulent concealment claim.

## I. Procedural Posture

There are two amended complaints in this multi-district litigation: one by State Attorneys General, and one by private consumer plaintiffs. Only the private plaintiffs seek to extend the statute of limitations on the basis of fraudulent concealment. There are also two categories of defendant: CD distributors and CD retailers. Both categories of defendants have moved to dismiss both complaints. As I have said in previous Orders, the lawsuit accuses the defendants of unlawfully fixing CD prices, largely through using Minimum Advertised Price (MAP) policies. The defendants assert that the plaintiffs are complaining about lawful, unilateral decisions by the various distributors and retailers and that the lawsuit should be brought to a halt now before further time and money are wasted.

## II. Facts As Alleged

The plaintiffs assert that CD prices started to go down in the early 1990s when the discount retailers started selling CDs at a lower price. Private Compl. ¶¶ 31–32; State Compl. ¶¶ 4, 13, 38. Then, they say, the traditional retailers complained to the distributors, who operate in a highly concentrated industry, and requested action to stabilize the prices. Private Compl. ¶ 33; State Compl. ¶¶ 35, 43–47. The distributors also were concerned because of the downward pressure on wholesale prices. Private Compl. ¶ 34; State Compl. ¶ 39. At trade association meetings, there was explicit discussion of remedies such as "retailer, distributor and music company partnerships." State Compl. ¶ 45. The distributors agreed to the retailers' requests and established or strengthened MAP policies. Private Compl. ¶¶ 35–36; State Compl. ¶¶ 5, 48, 69. The policies worked, the discount retailers unwillingly agreed to them and the traditional retailers thanked

the distributors, and assisted in reporting violations. Private Compl. ¶¶ 39–41, 43; State Comp. ¶¶ 60–63. The prices stabilized or increased, notwithstanding dramatic declines in the costs of producing CDs. Private Compl. ¶¶ 43–44; State Compl. ¶¶ 68, 70, 72.

The State Complaint alleges separate agreements between particular retailers and particular distributors. The Private Complaint alleges an agreement generally among distributors as well as among retailers. The private complaint also alleges fraudulent concealment of the scheme in two ways: (1) the scheme was "self concealing"; and (2) the distributors affirmatively and fraudulently concealed the scheme. Private Compl. ¶¶ 51–54. The defendants complain that all these assertions are too vague to justify proceeding with the lawsuit and seek dismissal.

## III. DISCUSSION

### A. The Sherman Act Claims

Ultimately, at summary judgment or at trial, *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), will require the plaintiffs to provide evidence of an agreement— or "evidence that tends to exclude the possibility of independent action by the [particular defendants]. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* at 768, 104 S.Ct. 1464. Harassment and threats in

themselves are not enough, but if they resulted in an agreement to raise or fix prices, that is enough. *See Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1162–63 (7th Cir.1987). Whether the plaintiffs will ultimately have enough evidence to withstand summary judgment and persuade a jury that there was in fact a voluntary or coerced agreement remains to be seen.

The question here, however, is whether they have alleged enough to survive the motions to dismiss. Yes, the FTC has previously conducted an investigation and the State Attorneys General have had access to some of the results, but that does not justify testing these amended complaints against more demanding pleading rules. These still are motions to dismiss at the beginning of discovery; the liberal notice pleading rules therefore apply: "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). The First Circuit has said that "the demands on the pleader are minimal." *Cooperman v. Individual, Inc.*, 171 F.3d 43, 47 (1st Cir.1999).[1] These amended complaints meet those requirements. The Supreme Court has reminded us that heightened pleading standards are not appropriate outside of Rule 9(b). *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517

---

**1.** The Federal Rules of Civil Procedure give us Form 9 as an example of an appropriate negligence complaint under notice pleading. For an automobile accident, it gives date, place and some details of the resulting injury, but the only allegation about the defendant's behavior is that the defendant "negligently drove a motor vehicle against plaintiff"—no evidentiary detail about what was negligent. *See also Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 72 n. 5 (1st Cir.2000) (citing Form 9 with approval). If that is enough to give a defendant notice of a claim of negligence and withstand a motion to dismiss, then what the plaintiffs have provided here is also adequate.

(1993).[2]

*DM Research, Inc. v. College of American Pathologists,* 170 F.3d 53 (1st Cir. 1999), and *Cooperman* yield no different conclusion, and could not, given the Supreme Court's pronouncements.[3] In an antitrust case, the plaintiff "need not include evidentiary detail." *DM Research,* 170 F.3d at 55. What is required is "a *factual* predicate concrete enough to warrant further proceedings .... Conclusory allegations in a complaint, *if they stand alone,* are a danger sign that the plaintiff is engaged in a fishing expedition." *DM Research,* 170 F.3d at 55 (second emphasis added). Here, the conclusory allegations do not stand alone; a factual predicate is provided.[4] When a plaintiff's case depends upon inference, the test is " 'when the suggested inference rises to what experience indicates is an acceptable level of probability.' " *Cooperman,* 171 F.3d at 47–48 (quoting *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir.1989) in a securities case). Although the alleged agreements here do rest largely on inference, the pattern of activity alleged meets the "acceptable level of probability" test at this pleading stage.

My conclusion applies to the vertical agreement (whether voluntary or coerced) alleged in both complaints and to the horizontal agreements alleged in the Private Complaint, although the latter are a much closer call. Nevertheless, in light of the alleged parallel behavior creating and enforcing MAPs, and the resulting return of prices to a higher and stabilized level, I find the allegations adequate for pleading purposes (an acceptable level of probability for inferring agreements). *Cooperman,* 171 F.3d at 47–48.

## B. The State Law Claims

The outcome for the state law claims is the same. (The defendants do not argue that any different analysis applies to the state claims.)

## C. The Fraudulent Concealment Claims *(Private Plaintiffs Only)*

 For fraudulent concealment (and extension of the statute of limitations), the private plaintiffs must plead (and later prove) "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff[s] to discover the operative facts that are the basis of [their] cause of action within the limitations period; and (3) plaintiff[s'] due diligence until discovery of the facts." *Berkson v. Del Monte Corp.,* 743 F.2d 53, 55 (1st Cir.1984) (internal quotation marks and citation omitted). Here, the heightened requirements of Rule 9(b) do apply: "the circumstances consti-

---

**2.** Notwithstanding *Leatherman,* the First Circuit admits that it has "demanded greater factual detail in a complaint in a few specific categories"—Rule 9(b), discrimination, RICO, and standing. *Langadinos,* 199 F.3d at 73. Antitrust is not listed. *Id.*

**3.** *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) ("[I]n antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly.") (citation omitted). The Supreme Court does allow trial judges discretion "to insist upon some specificity in

pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**4.** *DM Research* upheld dismissal of an antitrust complaint, but that complaint alleged conscious parallel behavior by two defendants under circumstances where it was implausible and irrational that they would agree, then asserted in a conclusory manner that there was nevertheless a conspiracy between them. 170 F.3d at 56–57. Here, by contrast, it is not irrational or implausible to infer agreement from the facts alleged.

tuting fraud ... shall be stated with particularity." *See J. Geils Band Empl. Benefit Plan v. Smith Barney Shearson, Inc.,* 76 F.3d 1245, 1255 (1st Cir.1996); *Varney v. R.J. Reynolds Tobacco, Co.,* 118 F.Supp.2d 63, 68 (D.Mass.2000).

■ I focus on the third requirement. The private plaintiffs must allege facts that show that they exercised due diligence in discovering the defendants' alleged price-fixing conspiracy and reasonably relied on the defendants' affirmative acts of concealment. *See Berkson* at 56; *Rutledge v. Boston Woven Hose & Rubber Co.,* 576 F.2d 248, 250 (9th Cir.1978) (noting that plaintiff's reliance must be reasonable). The Private Complaint fails to allege any steps the private plaintiffs took to exercise due diligence or how they reasonably relied on the alleged affirmative acts of concealment. .

The private plaintiffs' only assertion of due diligence is that the "[p]laintiffs could not have discovered any of the violations before [the filing of the class action complaint] by the exercise of due diligence because of the fraudulent and affirmative concealment of the combination or conspiracy by Defendants and their Co–Conspirators." Private Compl. ¶ 54. This is wholly conclusory. They do not mention any investigation or other efforts to discover any antitrust violations by the defendants. "Conclusory allegations of due diligence are not sufficient." *Berkson,* 743 F.2d at 56; *see also DM Research,* 170 F.3d at 55 (requiring a *"factual* predicate concrete enough to warrant further proceedings"). Because the private plaintiffs have utterly

failed to make any allegations of due diligence, the private plaintiffs cannot claim that their price-fixing conspiracy claim was fraudulently concealed. *Berkson,* 743 F.2d at 56.

The private plaintiffs try to excuse their failure to investigate by asserting that the defendants denied any wrongdoing in the FTC investigations and the private antitrust suits brought by retailers, but they do not allege that they reasonably relied on these denials. Private Compl. ¶¶ 53, 54. In order for the defendants' denial of antitrust violations to amount to fraudulent concealment, the private plaintiffs must allege that they reasonably relied on that denial. *See Berkson,* 743 F.2d at 56. *Accord Rutledge,* 576 F.2d at 250 (noting that denying wrongdoing is not fraudulent concealment unless the plaintiffs' reliance is reasonable).[5]

Without alleging with particularity any due diligence or reasonable reliance on the defendants' concealment, the private plaintiffs have no factual predicate for their claim of fraudulent concealment. Therefore, the private plaintiffs' second cause of action for fraudulent concealment is DIS-MISSED.

**SO ORDERED.**

---

5. In fact, the allegations on the face of the complaint negate any reliance, reasonable or otherwise, by the plaintiffs: the private plaintiffs allege that there were news reports concerning the FTC investigation and the private civil antitrust actions. Private Compl. ¶ 53; *see also Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975) (finding no fraudulent concealment where industry-wide publicity of FTC suit should have aroused the plaintiffs' suspicions). In light of these allegations, the defendants' denial of antitrust violations in defending against these claims does not give rise to a claim of fraudulent concealment.