# United States Court of Appeals
## For the First Circuit

No. 02-1198

DOROTHY ARRUDA ET AL.,

Plaintiffs, Appellants,

v.

SEARS, ROEBUCK & CO. ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Howard, Circuit Judge.

Christopher M. Lefebvre, with whom Law Offices of Claude Lefebvre & Sons, Daniel A. Edelman, Tara L. Goodwin, and Edelman, Combs & Latturner, LLC were on brief, for appellants.
Philip D. Anker, with whom Bruce M. Berman, Steven E. Hugie, Michael D. Leffel, Wilmer, Cutler & Pickering, Howard A. Merten, Jr., Vetter & White, David Grossbaum, Maura K. McKelvey, Cetrulo & Capone, LLP, James R. DeGiacomo, and Murtha Cullina Roche & DeGiacomo were on brief, for appellees.

October 30, 2002

**SELYA**, <u>Circuit Judge</u>.  A discharge in bankruptcy, simpliciter, ordinarily does not wipe out previously perfected security interests in tangible personal property.  The lienholder retains a right of repossession, subject, however, to the bankrupt's possible right of redemption.  If timely exercised, this right of redemption allows an individual Chapter 7 debtor to "redeem [certain] tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt" by paying the lienholder a sum equal to "the amount of the allowed secured claim."  11 U.S.C. § 722 (2000).

The cases that undergird this appeal present something of an anomaly.  They involve a preserved security interest but no secured claim per se.  Thus, they involve a right of repossession, and the parties, by instruments that they refer to as "redemption agreements" — we shall honor that characterization even though, technically, this may not be the type of redemption agreement that section 722 contemplates — have agreed to cancel that right of repossession on payment of an "agreed value" for the collateral.  That value is not in issue; as we shall see, the parties agreed to specific dollar figures, and they are bound by those agreements.  What is in issue are particular aspects of the negotiated transactions.

To be specific, the appellants — several former Chapter 7 debtors seeking to represent a putative class — maintain that the principal defendant, Sears, Roebuck & Company,[1] habitually violated the Bankruptcy Code by the manner in which it essayed to enforce security liens in household goods and other personal property. Their claim has two subparts. First, they allege that redemption agreements between lienholders and debtors, entered into after the granting of a discharge in bankruptcy, invariably violate the prohibitions of the bankruptcy discharge injunction, codified in 11 U.S.C. § 524. Second, they allege that, in all events, such agreements require bankruptcy court approval (which was never obtained).

In addition to these bankruptcy-related asseverations, the appellants also advance a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692o (2000). This claim — that the individual defendants (lawyers representing Sears) transgressed the FDCPA while supposedly attempting to effect repossession — requires a determination of whether the FDCPA reaches the defendants' activities. That, in turn, requires us to consider the nature of a "debt" as that term is employed in the FDCPA.

---

[1]Sears National Bank (which financed many of the appellants' purchases) is also named as a defendant. Because its presence adds nothing to the explication of the issues on appeal, we refer to the two corporations, collectively, as "Sears."

The district court wrote a thoughtful opinion in which it answered both the bankruptcy and the FDCPA questions adversely to the appellants. Arruda v. Sears, Roebuck & Co., 273 B.R. 332 (D.R.I. 2002). It thereupon dismissed their complaints. Id. at 351. For the reasons that follow, we affirm the district court's order.

## I.  BACKGROUND

The district court has furnished an exegetic account of each appellant's situation and the litigation's procedural history. See id. at 340-42. Rather than repastinate that well-plowed soil, we present here only the background facts necessary to frame the issues on appeal. Because the district court acted under Fed. R. Civ. P. 12(b)(6), we derive these facts from the several complaints, purged, however, of empty rhetoric. See SEC v. SG Ltd., 265 F.3d 42, 44 (1st Cir. 2001); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

The appellants are Rhode Island residents, all of whom had filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701-784 (2000). Each had purchased consumer goods from Sears (e.g., refrigerators, sewing machines) prior to filing for bankruptcy. On the filing date, each owed money to Sears for the purchases and each listed the Sears debt as an unsecured, nonpriority claim on his/her bankruptcy schedules. The

4

bankruptcy court granted each appellant a general discharge encompassing the Sears indebtedness.

Of course, the discharges did not erase Sears's prepetition security interest in the purchased property. See id. § 522(c) and (f); see also In re Brown, 73 B.R. 740, 745 (Bankr. W.D. Wis. 1987) (discussing how section 522 operates in connection with purchase money security interests in household goods). Relying on this fact, Sears thereafter asserted its rights of repossession. Its correspondence with the appellant Dorothy Arruda was typical. Sears's letter asked Arruda to contact its office to arrange for turning over the collateral (in her case, a range hood, a lawn mower, and a sewing machine). Arruda no longer possessed two of the three items in which Sears claimed an interest. When she called to discuss the situation, she was told by a Sears representative that she could either surrender the goods or redeem them by paying their fair market value as determined by Sears.

Two other appellants, Melanie Velleco and Blanche Sroka, had similar experiences. In each instance, lawyers representing Sears insisted that the discharged debtor either surrender the affected property voluntarily, state an intention to redeem it, or forfeit it through state replevin proceedings in which "the Sheriff [would] go out with [a Sears representative] to take possession of the items in question."

5

Sears's interaction with the appellants Vincent and Kathleen Kowal was along the same lines. The Kowals allege that various individuals representing Sears sent them letters offering to allow them to retain the articles that were the subject of the replevin action (a bicycle, a gas range, a sofa, and some exercise equipment) in exchange for a payment equaling the merchandise's fair market value. These letters indicated that the Kowals had "requested payment terms to settle Sears' claim of repossession" and that "Sears will settle the claim[s] for a lump sum payment" (totaling $1,165.37 for the four items) that "Sears believe[d] . . . represent[ed] the fair market value of the items."

In every case, the appellants eventually received documents which, for present purposes, were materially identical to the memorandum of redemption received by Velleco and reproduced in the appendix. Arruda, Velleco, and Sroka each signed the proffered redemption agreement and returned it to Sears with a check reflecting the "agreed value" specified therein. The Kowals signed a similar redemption agreement for the sofa and gas range, paying the amount established by Sears for those items. They did not attempt to redeem either the bicycle or the exercise equipment, and Sears subsequently repossessed those articles.

Without exception, Sears asserted its right of repossession only after an appellant's bankruptcy proceedings were completed. Once a discharged debtor signed a redemption agreement,

6

Sears notified his/her attorney that it was unable to file the agreement because the bankruptcy case was closed. See generally 11 U.S.C. § 501 (permitting, but not requiring, secured creditor to file a proof of claim or interest during the pendency of bankruptcy proceedings). It stated, however, that it nonetheless intended to honor the agreement.

The appellants allege that the amounts Sears required in order to release its security liens on the goods bore no correlation to actual market values (and, in fact, exceeded market value). The appellants also allege that the cost of replevying the goods outweighed any residual value that Sears realistically could have hoped to realize from a resale of the merchandise. Conspicuously absent are allegations that the redemption values were in any way linked to the amount of the debt owed with respect to the purchase of the goods.

Against this backdrop, the appellants portray Sears's activities as part of an illicit scheme: they envision Sears as lying in wait until a debtor's bankruptcy case is closed and then — with the Bankruptcy Court's attention focused elsewhere — contacting the debtor and threatening to repossess useful household goods unless the debtor enters into a high-priced redemption agreement. This scheme, the appellants say, violates the bankruptcy discharge injunction, 11 U.S.C. § 524, as an attempt to collect discharged debt without judicial approval of either the

redemption agreements or the valuations assigned to individual items of collateral.  The Kowals add two further arguments:  that Sears's use of inaccurate valuation tables and other scurrilous tactics constitute fraud and false pretenses, and that the debt collectors' actions violate the FDCPA.

Treating the several cases as an integrated whole, the district court dismissed the complaints insofar as they purported to allege federal claims.  As to the bankruptcy issues, the court ruled that Sears's efforts anent repossession (and the ensuing redemption agreements) did not offend the Bankruptcy Code.  Arruda, 273 B.R. at 348.  As to the remaining federal issue, the court held that the FDCPA did not apply to the challenged activities.  Id. at 349-51.  Finally, the court declined to retain supplemental jurisdiction over the appellants' state-law claims, dismissing them without prejudice.  Id. at 351 (citing  28 U.S.C. § 1367(a)).  This appeal followed.

## II.  ANALYSIS

We review a district court's dismissal of an action for failure to state a claim de novo.  Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002).  In so doing, we follow the same rules that bound the district court.  Consequently, we assume the truth of all well-pleaded facts and indulge all reasonable inferences therefrom that fit the plaintiff's stated theory of liability.  Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).  In that process, we give

8

no weight to "bald assertions, unsupportable conclusions, and opprobrious epithets." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (citation and internal quotation marks omitted). Within these guidelines, we will affirm a Rule 12(b)(6) dismissal only if "the factual averments do not justify recovery on some theory adumbrated in the complaint." Rogan, 175 F.3d at 77.

Two special principles are also relevant here. For one thing, the appellants attached various documents, including the memoranda of redemption, to their complaints. When a complaint annexes and incorporates by reference a written instrument, any inconsistencies between the complaint and the instrument must be resolved in favor of the latter. See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000); see also Young v. Lepone, ___ F.3d ___, ___ (1st Cir. 2002) [No. 01-2622, slip op. at 17-18]. For another thing, the Civil Rules require fraud to be pleaded with particularity. Fed. R. Civ. P. 9(b). This requirement "entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations." Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991).

With this framework in place, we turn to the appellants' assignments of error.

## A.    **The Bankruptcy Discharge Injunction**.

The most pervasive issue in this case hinges on the scope and operation of the bankruptcy discharge injunction, 11 U.S.C. § 524.  This is a matter of statutory construction, and we approach it by examining the language of the pertinent statutes.  United States v. Charles George Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987).  In determining the meaning of a statute, we presume that Congress intended all of the constituent words and passages to have meaning and effect.  Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999).  Concomitantly, we "defer to Congress's choice of phrase and give words used in a statute their ordinary and accepted meaning."  C.K. Smith & Co. v. Motiva Enters. LLC, 269 F.3d 70, 76 (1st Cir. 2001).

Section 524(c) deals specifically with agreements between debtors and those who hold claims against them.  It states in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law . . . [and] only if [certain elements not relevant here are satisfied].

11 U.S.C. § 524(c).  For present purposes, then, the threshold inquiry is whether the consideration underlying a particular redemption agreement is based to any degree on a debt that is dischargeable (or that has been discharged) in bankruptcy.  This

10

inquiry involves two different bodies of law:  the dischargeability of a debt is a matter of federal bankruptcy law, but whether the consideration for the underlying agreement is based on that debt is a matter of state contract law.

We start with the federal question.  Although the terms "discharge" and "dischargeable" are not explicitly defined in the Bankruptcy Code, 11 U.S.C. § 524(a) sheds considerable light upon the matter.  It states that a "discharge . . . voids any judgment . . . to the extent that [it] is a determination of the <u>personal liability</u> of the debtor . . . [and enjoins] the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a <u>personal liability</u> of the debtor . . . ."  <u>Id.</u> § 524(a)(1)-(2) (emphasis supplied).  Thus, only a debtor's personal liability is dischargeable in a Chapter 7 case.  It follows, therefore, that the strictures of section 524(c) apply only to those agreements the consideration for which involves, in whole or in part, the imposition (or reimposition) of personal liability with respect to a debt dischargeable (or previously discharged) in bankruptcy.

This brings us to the second phase of our inquiry.  Here, the relevant state law is the law of Rhode Island.  Under Rhode Island law, "[u]nambiguous language is to be accorded its plain and natural meaning."  <u>Newport Plaza Assocs.</u> v. <u>Durfee Attleboro Bank</u>, 985 F.2d 640, 645 (1st Cir. 1993).  The interpretation of such

11

language presents a question of law.  Id. at 644 (citing Judd Realty, Inc. v. Tedesco, 400 A.2d 952, 955 (R.I. 1979)).  And when intent is plainly revealed by the express terms of a written contract, an inquiring court should not search for "some undisclosed intent . . . but [rather, look to that intent] . . . expressed by the language contained in the contract."  Woon. Teachers' Guild, Local 951 v. School Comm., 367 A.2d 203, 205 (R.I. 1976).

Each redemption agreement at issue here contains an explicit acknowledgment that "the Debtor's failure to redeem as described within this agreement shall not impose any personal liability on the Debtor."  Each agreement adds that "if the debtor fails to pay the redemption amount, Sears' only recourse is against the collateral."  This language appears just above the agreement's signature line and just below the underscored heading:  "**No Personal Liability**."  The appellants do not allege that they were unaware of this language; indeed, their complaints confirm that they consented to this very formulation.  Given these facts, the agreements cannot plausibly be interpreted to impose personal liability on the appellants in any way.  To cinch matters, the appellants do not allege any facts which, under Rhode Island law, might justify judicial disregard of the clear contractual text.  We conclude, therefore, that because these agreements do not purport

12

to impose any personal liability on account of discharged debts, section 524(c) does not affect their enforceability.

The appellants labor to avoid this dead end. Their escape route involves two related points: that Sears, by means of its self-serving valuation tables, greatly overstated the worth of the collateral, and that the district court disregarded the method of Rule 12(b)(6) when it failed to indulge the appellants' allegation that these inflated valuations represented veiled attempts to collect on account of discharged debts. But this route also leads to a blind alley, for it overlooks the express terms of the redemption agreements.

In these agreements, the appellants attest that they "agreed [to] the replacement value of the . . . property, for the purpose of redemption." They then agreed that, upon payment of the stipulated amount(s), "Sears [sic] security interest in the . . . merchandise shall be terminated." Each agreement, therefore, makes manifest the parties' objective intent: to leave the goods in situ, settle upon an agreed fair market value, and exchange that sum for extinguishment of Sears's right of repossession. The appellants' attempt to contradict this clear contractual language cannot be credited. See Clorox, 228 F.3d at 32.

In an effort to rebut this reasoning, the appellants suggest that the redemption agreements lack force because they were not judicially approved. This is a red herring: neither the

13

Bankruptcy Code nor the implementing rules demand judicial approval of all redemption agreements. The relevant section of the Bankruptcy Code provides that an "individual debtor may" redeem certain property. 11 U.S.C. § 722. In a similar vein, the relevant bankruptcy rule provides that "the court may authorize the redemption" upon the debtor's motion. Fed. R. Bankr. P. 6008. These provisions are obviously precatory. There is no imperative requiring judicial approval in every instance; "only when there is some disagreement between the individual debtor and the secured creditor, usually . . . over value, is the court called upon to act." 10 Lawrence P. King et al., Collier on Bankruptcy ¶ 6008.04 (15th rev. ed. 2002). The complaints in these cases do not contain any allegation that the parties reached any such impasse in their redemption negotiations.

That omission conclusively rebuts the appellants' suggestion. Taken in light of the explicit terminology of the redemption agreements, the omission reveals the appellants' "motive" allegation to be nothing but a bald assertion about an undisclosed intent. Because such an assertion flies in the teeth of explicit contractual language, it must be disregarded. To hold otherwise would frustrate both Rhode Island contract law, e.g., Newport Plaza, 985 F.2d at 644-46; Woon. Teachers' Guild, 367 A.2d at 205, and federal procedural orthodoxy, e.g., Young, ___ F.3d at ___ [slip op. at 17-18]; Clorox, 228 F.3d at 32.

14

The appellants next asseverate that Sears violated section 524 by deliberately awaiting the conclusion of bankruptcy proceedings before asserting its right of repossession. They say that redemption under 11 U.S.C. § 722 is supposed to occur during the pendency of a bankruptcy proceeding, and that, therefore, Sears had no right to wait until after the granting of a discharge to propose settlement terms. Because Sears failed to file a claim during the bankruptcy proceedings, this thesis runs, any payment for the goods would necessarily be on account of discharged debt (and, thus, violative of the bankruptcy discharge injunction). To this they add that the district court erred in finding, contrary to the allegations of the complaints, that "Sears only sought to recover property in which it had a security interest." Arruda, 273 B.R. at 344. These contentions are meritless.

It is hornbook law that a valid lien survives a discharge in bankruptcy unless it is avoidable and the debtor takes the proper steps to avoid it. Holloway v. John Hancock Mut. Life Ins. Co. (In re Holloway), 81 F.3d 1062, 1063 (11th Cir. 1996). A surviving lien remains enforceable, for "a bankruptcy discharge extinguishes only one mode of enforcing a claim — namely, an action against the debtor in personam — while leaving intact another — namely, an action against the debtor in rem." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991).

15

Generally speaking — the possible exceptions are not apposite here — nothing in the Bankruptcy Code imposes an affirmative duty on a lienholder to assert its in rem rights prior to the debtor's securing of a discharge. See Farrey v. Sanderfoot, 500 U.S. 291, 297 (1991). This flexible sequencing is fully consistent with the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362, which — unless and until the stay is lifted — ordinarily will prevent a creditor from attempting to take possession of any part of the debtor's estate prior to discharge. Accordingly, we conclude that a lienholder does not violate section 524(a) by waiting until a bankruptcy case is closed before asserting its in rem rights.

We also conclude, notwithstanding the appellants' importunings, that a lienholder does not violate any provision of the Bankruptcy Code merely by proposing redemption terms to a debtor after the latter has received a general discharge. Cf. Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 399 (1st Cir. 2002) (holding, in the bankruptcy reaffirmation context, that "a creditor may discuss and negotiate terms for reaffirmation with a debtor without violating the automatic stay as long as the creditor refrains from coercion or harassment"). Even after the termination of a bankruptcy case, a discharged debtor who wishes to redeem property pursuant to section 722, but who believes that the terms proposed by the lienholder are unfair, can ask the bankruptcy

16

court to reopen the bankruptcy case and adjudicate the matter.  See In re Cassel, 41 B.R. 737, 740 (Bankr. E.D. Va. 1984).  It follows that, at least in the absence of factually supported allegations of coercion or harassment,[2] the appellants fail to state a claim simply by juxtaposing Sears's timing and its proposed settlement terms.

The appellants' last bankruptcy-related argument hinges on their assertion that Sears never wanted to enforce its rights in the property, but, rather, aspired all along to collect money.  The district court found this argument unpersuasive, Arruda, 273 B.R. at 344-45, and so do we.

Home State Bank makes clear that the in rem right that survives bankruptcy is a "'right to payment' in the form of [the lienholder's] right to the proceeds from the sale of the debtor's property."  501 U.S. at 84.  Section 722 gives the debtor, in effect, "a right of first refusal . . . in consumer goods that might otherwise be repossessed."  H.R. Rep. No. 95-595, at 381 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6337.  Thus, the lienholder's right to repossess is nothing more than a right to an

---

[2]The instant complaints are devoid of any such allegations. Although the Kowals charge Sears with "obtaining possession of collateral for the purpose of coercing debtors into paying money," the most that can be inferred from the facts upon which this naked conclusion rests is that Sears drove a hard bargain.  A creditor's use of its leverage, in and of itself, does not constitute coercion.  Jamo, 283 F.3d at 401.  Whether there is the basis for a state-law claim is, of course, another matter — and one on which we take no view.

equitable remedy for the debtor's default.  Home State Bank, 501 U.S. at 84.  The fact that this surviving right is in rem only limits the recourse that the lienholder can take to repossession or obtaining an amount of money reflecting the value of the collateral.

Here, all the complaints admit that the parties agreed to the values and that Sears's only proposed course of action, absent such an agreement, was replevin.  Given these uncontested facts, the complaints fail to state a cognizable claim, for Sears was acting within the scope of its in rem rights — rights that survived the granting of the debtors' bankruptcy discharges.  Consequently, any conflict between the allegation that Sears was more interested in money than in goods and the district court's conclusion that Sears's intent was to repossess property is harmless.

That ends our inquiry into the alleged Bankruptcy Code violations.  The redemption agreements that Sears proposed do not seek to impose personal liability on the debtors on account of discharged debts — indeed, they relate to discharged debts in only the most tangential way.  They therefore fall outside the purview of section 524(c).  Thus, the district court correctly concluded that the facts as alleged in the several complaints failed to state actionable claims for federal bankruptcy-law violations.[3]

---

[3]We do not reach the question of whether the complaints limn actionable claims for fraud, false pretenses, or the like.  Those are matters for a state court to determine.

18

### B. **The FDCPA Claim**.

The FDCPA is a landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices. 15 U.S.C. § 1692. The Kowals' amended complaint charges that the individual defendants (lawyers retained by Sears) violated this statute.[4] The FDCPA is detailed and prohibits many activities. The basic premise of the statutory scheme, however, is that its prophylaxis applies in connection with the collection of debts. See, e.g., id. § 1692e. At a minimum, therefore, a complaint must allege a scenario involving the collection (or attempted collection) of a debt.

The FDCPA defines debt, in pertinent part, to mean "any obligation or alleged obligation of a consumer to pay money." Id. § 1692a(5). Although this language is broad, it is plain that the sine qua non of a debt is the existence of an obligation (actual or alleged). See Ernst v. Jesse L. Riddle, P.C., 964 F. Supp. 213, 215 (M.D. La. 1997). We mine the Kowals' complaint in search of an allegation pertaining to this element.

The complaint avers that the individual defendants infracted the FDCPA by, inter alia, communicating to the appellants the option of retaining the collateral "in exchange for the payment of money." The complaint further alleges that this offer was made

---

[4]The Kowals do not accuse Sears of violating the FDCPA, presumably because Sears would not fit within the statutory definition of "debt collector." 15 U.S.C. § 1692a(6).

19

"for the purpose of coercing [the appellants] into paying money on discharged debts." Except for multiple references to "discharged debts," the complaint is silent as to the "debt" element of the asserted FDCPA cause of action.

It is readily evident, therefore, that the complaint refers to the payment of money — but the FDCPA does not broadly forbid practices in connection with all payments of money. The practices that it proscribes are in connection with the collection of debts, and the complaint makes no reference to any obligation to pay money — the crux of "debt" as that term is defined by the FDCPA. Moreover, none of the facts set forth in the complaint support an inference that the Kowals were obligated to pay any money to Sears. Thus, to allow these allegations to trigger the FDCPA would require us to read the word "obligation" out of the statute. There is no principled way to indulge such a reading. See Lopez-Soto, 175 F.3d at 173 (explaining that all words in a statute must be given meaning and effect).

The complaint's references to discharged debts do not salvage the FDCPA claim. A "discharge extinguishes . . . 'the personal liability of the debtor.'" Home State Bank, 501 U.S. at 83 (quoting 11 U.S.C. § 524(a)(1)). Once that liability has been extinguished in bankruptcy, the debtor no longer has a personal "financial or pecuniary obligation" for the debt. Black's Law

20

Dictionary 925 (7th ed. 1999). Hence, a discharged debt carries with it no personal obligation to pay money.

In sum, the FDCPA's definition of debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money. To permit the mere mention of a discharged debt, for which the debtor has no personal financial obligation, to satisfy the FDCPA requirement would contradict the plain language of the statute. Although a court, faced with a Rule 12(b)(6) motion, must mine the factual terrain of the complaint and indulge every reasonable inference in the pleader's favor, it cannot uphold a complaint that fails to establish an essential nexus between the underlying events and the theory of relief. See Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991). This is such a case: the complaint fails to link the Kowals' discharged personal liability with any obligation on their part to pay money.

Let us be perfectly clear. We recognize that a plaintiff may bring a claim under the FDCPA by pleading that a debt collector falsely alleged an obligation to pay money. But the complaint in this case fails to state a claim under that theory. The complaint never asserts that the lawyers told the Kowals that they were obligated to pay money on account of the discharged debts or otherwise, nor does it allege facts sufficient to support an inference that the lawyers acted so as to create this false

21

impression. Indeed, the collection letters (attached to the complaint) conclusively refute any such illation.

Those letters presented the Kowals with the terms under which Sears was willing to abandon its right of repossession, no more and no less. The letters indicated the amount of money that "Sears believe[d] . . . represent[ed] the fair market value of the items," and stated that if the Kowals did "not agree with these values, [they had] the option of reopening the bankruptcy and seeking a valuation hearing." Given this correspondence, the most that can be said is that the Kowals faced an unhappy choice in these transactions, not an obligation to pay money.

## III. CONCLUSION

We need go no further. Painting a pumpkin green and calling it a watermelon will not render its contents sweet and juicy. That analogy is useful here: the bald assertion that the redemption agreements were efforts to collect discharged debts will not suffice to transform them into something they plainly are not. By failing to show that these agreements sought to impose personal liability, the appellants fail to state a claim that Sears violated the bankruptcy discharge injunction. By the same token, the appellants' failure to make out a nexus between the discharged debt and any existing or alleged obligation to pay money undermines any claim against the individual defendants for transgressing the

FDCPA.  Consequently, the district court did not err in dismissing the appellants' complaints.

**<u>Affirmed</u>**.

**APPENDIX**

**MEMORANDUM OF REDEMPTION**

I, Melanie Velleco (debtor), hereby elect to exercise my right under Section 722 of the Bankruptcy Code to redeem the personal property listed below from the purchase money security interest held by Sears, Roebuck and Co. or one or more of its affiliates ("Sears"):

Merchandise:          Agreed Value
REFRIGERATOR                $303.99

                        Total:  $303.99

The above listed property is intended for personal, family or household use and is either exempted under Section 522 of the Bankruptcy Code or was abandoned under Section 554 of the Bankruptcy Code.  The property was purchased under my Sears Account # 03-59272-23430-3.

Sears and I have agreed that the replacement value of the above listed property, for the purpose of redemption, is $303.99, and that I will pay the agreed upon redemption amount by March 11, 1999.

Termination of Security Interest.  Upon payment and delivery of a signed copy of this memorandum, Sears security interest in the above described merchandise shall be terminated.

No Personal Liability.  The parties acknowledge that the Debtor's failure to redeem as described within this agreement shall not impose any personal liability on the Debtor and that, if the Debtor fails to pay the redemption amount, Sears only recourse is against its collateral.

_____          _____
Debtor's Signature              Date


_____          _____
Debtor's Attorney               Date


_____          _____
Sears Representative            Date