# United States Court of Appeals
## For the First Circuit

No. 02-2114

DJ MANUFACTURING CORPORATION,
Plaintiff, Appellant,

v.

TEX-SHIELD, INC.,
Defendant, Appellee,

XYZ INSURANCE CO., CREATIVE APPAREL,
BLUCHER USA, BLUCHER GMBH.,
Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Marc Lamer, with whom Kostos & Lamer, PC, Eugene F. Hestres and Bird, Bird and Hestres were on brief, for appellant.
Timothy K. Beeken, with whom Debevoise & Plimpton, Daniel M. Abuhoff, Correa, Collazo, Herrero, Jiménez & Fortuño and Pedro Jiménez were on brief, for appellee.

July 28, 2003

**TORRUELLA**, **Circuit Judge**.   Plaintiff-appellant DJ Manufacturing ("DJM") alleges that Tex-Shield, Inc. ("Tex-Shield") and Creative Apparel Associates ("Creative Apparel") violated, inter alia, a Puerto Rican antitrust statute, 10 P.R. Laws Ann. § 264 (2002), by conspiring to destroy competition in the market for chemical protective clothing in Puerto Rico.[1]   The district court dismissed the complaint on a motion to dismiss.   After careful review, we reverse and remand for further proceedings.

## I.  Facts

Because this is an appeal from a dismissal under Fed. R. Civ. P. Rule 12(b)(6), "[w]e glean the facts from the amended complaint, stripped of any rhetorical gloss." Young v. Lepone, 305 F.3d 1, 4 (1st Cir. 2002).

DJM manufactures sewn clothing and equipage for the United States military.   It is a "small disadvantaged business" under 48 C.F.R. § 19.001 (2003) (and a certified participant in the Small Business Administration's program for contracts set aside to small disadvantaged businesses under Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a) (2000).

---

[1]  The plaintiffs also alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, Sections 2(a), (e), and (f) of the Robinson-Patman Act, 15 U.S.C. §§ 13(a), (e), (f), the Puerto Rican statute dealing with price discrimination, 10 L.P.R.A. § 263, and the Puerto Rican statute dealing with transactions in restraint of trade, 10 L.P.R.A. § 258.   The district court's decision is unchallenged with respect to these other claims.

Defendant Tex-Shield manufactures, and its parent Blucher GmbH holds a patent for, technology used to produce a chemical protective material known as "Saratoga Filter Cloth" (the "Cloth"). The Cloth is a protective shield against biological and chemical agents sewn into garments purchased by the United States military and used for protection against attack by chemical warfare.

In July 1993, the United States Air Force ("USAF") requested bids for the production of 40,000 Chemical Defense Coveralls. The bidding was limited to businesses participating in the SBA's § 8(a) program, such as DJM. The USAF specified that the coveralls must be made using the Cloth and identified Tex-Shield as the sole source. DJM won the contract.

DJM then subcontracted with Tex-Shield to buy the Cloth for a price of $49.27 per yard. Subsequently, DJM and Tex-Shield made a "technical services" contract, whereby, for a fee of $35,000 per month for twelve months, Tex-Shield agreed to provide DJM with certain technical services.

On June 24, 1994, the Defense Personnel Support Center ("DPSC") solicited proposals for the production of at least 100,000 chemical and biological suits, with an option for more. As with the USAF solicitation, the DPSC solicitation was limited to SBA's § 8(a) program participants. Also, the solicitation required the suits be made with the Cloth; again, Tex-Shield was identified as the Cloth's sole approved source.

In preparing its bid for DPSC, DJM inquired as to the cost of procuring the Cloth. Tex-Shield quoted DJM a price of $38.71 per yard for the first 100,000 suits, and $41.07 per yard for any additional yardage. Tex-Shield quoted DJM a price of $148.95 for the first 100,000 suits in pre-cut "kits" and $154.43 per kit for any extra kits. Based on these quotes, DJM offered DPSC a price of $186.62 per unit for the first 100,000 suits and $183.50 for any more suits. Creative Apparel bid $179.55 for the first 100,000 suits and $186.02 for any extra. Creative won the contract.

DJM filed a complaint against Tex-Shield, Blucher USA, Blucher GmbH, and Creative Apparel,[2] alleging several federal and state antitrust violations. The complaint included allegations that Tex-Shield violated § 264 of the Puerto Rico Anti-Monopoly Act by selling goods in Puerto Rico at prices different from the articles' price when sold elsewhere.

The district court dismissed all of the consolidated actions, including the § 264 count, for failure to state a cause of action. See Fed. R. Civ. P. 12(b)(6). In dismissing the § 264 count, the district court read the section only as an anti-dumping

---

[2] Tex-Shield is wholly-owned by Blucher USA, which in turn is wholly-owned by Blucher GmbH. Creative Apparel is, like DJM, a clothing and equipage manufacturer. Tex-Shield, the Cloth's sole supplier, also makes finished chemical and biological protective clothing.

-4-

statute, forbidding the sale of goods at lower prices in Puerto Rico.

DJM appeals only the lower court's dismissal of the § 264 count, as DJM waived all other appealable errors.

## II.  Standard of Review

We review the district court's resolution of Tex-Shield's motion to dismiss de novo.  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).  When a litigant is facing a summary dismissal, we first accept the complaint's well-pleaded factual allegations as true, drawing all reasonable inferences in the plaintiff's favor, and then determine whether this reading of the complaint justifies recovery on any cognizable theory.  Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002).  Summary disposals "should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of alleged conspirators, and hostile witnesses thicken the plot."  Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962).

## III.  Analysis

Two issues require discussion.  First, we consider if the district court erred when it limited the interpretation of the phrase "at prices which are substantially different" to only those situations where a supplier offers its product at a substantially lower price to Puerto Rican customers as opposed to non-Puerto

Rican customers, and ruled out those situations where a supplier charged the Puerto Rican company substantially more than a non-Puerto Rican company. Second, we decide if DJM's complaint alleges sufficient facts to establish a § 264 claim, including whether the complaint at least inferentially asserts that (1) Tex-Shield's alleged conduct is aimed at "destroying competition or eliminating a competitor located in Puerto Rico"; and (2) the goods at issue are of the same grade or quality.

### A. Statutory Interpretation

Neither this circuit nor the Puerto Rican commonwealth courts have determined the pricing behaviors covered by § 264. DJM contends that the statute prohibits charging either less or more for goods in Puerto Rico. Thus, DJM argues that the district court erred when it viewed the statute as an anti-dumping statute that prohibits only the charging of lower prices in Puerto Rico. Finally, DJM argues that § 264 is clear on its face and that we should thus refrain from examining its legislative history. We agree.

Where the statute's language is clear, and its terms do not lead to "absurd or wholly impracticable consequences," the words used are generally taken as the final expression of the intended meaning. Caminetti v. United States, 242 U.S. 470, 490 (1917); see also United States v. Mo. Pac. R.R., 278 U.S. 269, 277-78 (1929) ("where no ambiguity exists, there is no room for

construction").  Although different canons of statutory construction may apply when construing statutes in a civil code system as opposed to statutes in a common law system, we need not concern ourselves with these differences because the Puerto Rico legislature provides a clear command as to the first step of civil code interpretation: "When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."  31 P.R. Laws Ann. § 14 (1967 & Supp. 1989); see also Pritzker v. Yari, 42 F.3d 53, 66-67 (1st Cir. 1994) (declining to "wander beyond the four corners" of a Puerto Rican statute to discern "legislative intent").

Here, the statute is clear regarding the pricing behavior it targets.  Section 264 states:

> It shall be unlawful to sell, contract to sell, offer to sell, or participate in any step for the sale of articles in Puerto Rico, after making due allowance for differences in costs incident to the delivering of goods in Puerto Rico and the costs of handling such goods in Puerto Rico, at prices which are substantially different from prices charged or quoted by such sellers for goods of the same grade or quality to buyers located outside of Puerto Rico, when such difference in price is granted with the purpose of destroying competition or eliminating a competitor located in Puerto Rico.

10 P.R. Laws Ann. § 264 (emphasis added).  Unlike the Federal Anti-Dumping Act of 1916, which the district court adopted as the definitive model for this statute, there is no specific prohibition

-7-

against charging "a price substantially less" in Puerto Rico -- instead the legislature chose the broader term "substantially different," which covers both higher and lower pricing.[3]

Because we hold the statutory language embraces both higher and lower prices on its face, we need not enter the quagmire of legislative history or use other tools of construction. The district court judge erred in interpreting the provision too narrowly, and that interpretation is reversed.

### B. Sufficiency of Factual Allegations

Having decided the statute includes both higher and lower price discrimination, we consider whether the complaint's

---

[3]  The Federal Anti-Dumping Act reads in pertinent part:

> It shall be unlawful for any person importing or assisting in importing any articles from any foreign country into the United States, commonly and systematically to import, sell or cause to be imported or sold such articles within the United States at a price substantially less than the actual market value or wholesale price of such articles, at the time of exportation to the United States, in the principal markets of the country of their production, or of other foreign countries to which they are commonly exported after adding to such market value or wholesale price, freight, duty, and other charges and expenses necessarily incident to the importation and sale thereof in the United States: Provided, That such act or acts be done with the intent of destroying or injuring an industry in the United States, or of preventing the establishment of an industry in the United States, or of restraining or monopolizing any part of trade and commerce in such articles in the United States.

15 U.S.C. § 72 (2003) (emphasis added). Clearly, the Puerto Rican legislature did not merely adopt the provision wholesale, but rather changed significant portions of it.

allegations and any logical inferences therefrom "justify recovery on any cognizable theory."  Martin, 284 F.3d at 6.  Here, DJM claims that the prices Tex-Shield charged to Creative Apparel were lower than those quoted to DJM plainly suffice to survive dismissal.

Even if the statute applies to the alleged charging of higher prices in Puerto Rico, there are still two possible obstacles to stating a claim under § 264.  First, § 264 prohibits a supplier from charging different prices for the purpose of destroying the supplier's "competition or eliminating a competitor located in Puerto Rico."  Second, § 264 requires that the goods be of "the same grade and quality."  The district court did not address either issue; taking all inferences in DJM's favor, we find the district court erred in dismissing the complaint.[4]

### 1.  Adverse Impact on Competition or Competitor

A well-pleaded § 264 claim must include allegations that the price discrimination was for "the purpose of destroying competition or eliminating a competitor located in Puerto Rico." In its complaint, DJM contends that Tex-Shield and Creative Apparel entered into "an agreement" involving, among other things, investment by Tex-Shield in Creative Apparel as part of a

> joint strategy to secure and maintain for the
> Blucher defendants monopoly power in United

---

[4]  This is not a case in which the district court converted the 12(b)(6) motion into a motion for summary judgment.

> States trade and commerce in Chemical
> Protective Cloth . . . and to attempt to
> secure and maintain, and to secure and
> maintain, monopoly power for Creative
> [Apparel] in United States trade and commerce
> in Chemical Protective Clothing, as well as in
> such trade and commerce in the § 8(a) market.

It is not irrational for a monopoly-holder such as Tex-Shield to act with the intent of sabotaging one of its two customers.[5] Such a concerted effort to establish and maintain monopoly power in the relevant markets, if proven, would meet § 264's purpose requirement because it would constitute an intent to harm competition in the chemical protective clothing market or eliminate DJM as Creative Apparel's competitor; thus, DJM's pleadings on this count suffice to meet § 264's intent requirement. Compare In re Compact Disc Minimum Advertised Price Antitrust Litig., 138 F. Supp. 2d 25, 28 n.4 (D. Me. 2001) (denying motion to dismiss where it was "not irrational or implausible to infer agreement from the facts alleged"), with DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55-56 (1st Cir. 1999) (affirming dismissal where complaint "merely assert[ed] a conspiracy in conclusory terms" and stating that allegation of some fact pertaining to an agreement would be

---

[5] Both the allegation that Tex-Shield is building "additional manufacturing operations" near Creative Apparel's plant and the claim that Tex-Shield is investing in Creative Apparel to "enhance its financial condition" could, if proven, support a finding of an anti-competitive purpose to the price differential. Both of these facts suggest a special relationship between Tex-Shield and Creative Apparel that would make it logical for them to conspire to destroy competition in the chemical protective clothing market.

-10-

necessary to overcome the improbability of a conspiracy against the interests of one or more of the parties).

## 2. Goods of Same Grade and Quality

Finally, § 264 requires that DJM allege that Tex-Shield was quoting different prices for "goods of the same grade or quality." Defendants argue that "the goods for which DJM requested a price -- pre-cut fabric kits -- were not the same grade or quality as the goods on which Creative Apparel requested a price -- uncut cloth on the roll." Although this argument may ultimately have merit, it does not preclude inferences from the complaint sufficient to defeat a Rule 12(b)(6) motion.

It is possible to infer from the complaint that the goods at issue were of the same grade and quality. According to the complaint, a DPSC report indicates that "Defendant Tex-shield had, in fact, offered the Blucher Chemical Protective Cloth to Creative at a significantly lower price than it had offered the cloth to DJM." Given that the final product, the chemical protective clothing, had to be produced according to military specifications that included use of the Cloth, it is a reasonable inference -- without considering any contrary proof -- that the goods at issue (the Cloth) had to be of the same grade and quality.[6] Cf. Arruda

---

[6] We find the defendant's reliance on Lubbock Glass & Mirror Co. v. Pittsburgh Plate Glass Co., 313 F. Supp. 1184, 1187 (N.D. Tex. 1970), unfounded. In Lubbock Glass, the court found that glass, doors, frames and windows could not be considered of like kind and quality when conveyed in different contracting jobs, because

v. <u>Sears, Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002) (indicating that in evaluating propriety of 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences therefrom that fit the plaintiff's stated theory of liability").

### IV. Conclusion

For the foregoing reasons, the district court's dismissal of the complaint is <u>reversed</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion. We intimate no view as to whether, after pretrial discovery, trialworthy issues will be shown to exist.

**Reversed and remanded**.

---

"intangible items, such as installation, weather conditions, the architect or contractor in charge of the job and other intangibles make each job unique or different." <u>Id.</u> at 1185. Further the court stated that

> commercial installed contracts . . . are a combination of many ingredients, none of which are subject to exact calculation. A difference in one ingredient could and probably would occasion a difference in the total price or bid. Apparently, someone calculating a bid for a commercial installed contract cannot even determine exactly the material costs involved.

<u>Id.</u> at 1186-87. The Cloth needed by both DJM and Creative is the same and the costs involved are easily estimated, as shown by DJM's own calculation of cutting costs.